1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  STEVEN REFUGIO RODRIGUEZ,              No.  2:22-cv-1539 WBS KJN P

12              Petitioner,

13      v.                                 FINDINGS AND RECOMMENDATIONS

14  MADDEN, Warden,

15              Respondent.

16

17  I.  Introduction

18        Petitioner, a state prisoner, proceeds without counsel with an application for a writ of

19  habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges the denial of his request to continue

20  the hearing on his motion to withdraw his guilty plea, and the denial of such motion.  He also

21  moves for discovery and to expand the record.  After careful review of the record, this court

22  concludes that the petition and his motion should be denied.

23  II.  The Instant Action

24        On September 1, 2022, petitioner filed the instant petition, a supporting memorandum,

25  and a motion for discovery and expansion of the record.  (ECF Nos. 1, 2, 3.)  Respondent lodged

26  the record and filed an answer.  (ECF Nos. 18, 19.)  Following extensions of time, petitioner filed

27  a traverse on April 6, 2023.  (ECF No. 24.)

28  ////

1

1    III.  Facts and Procedural Background[1]

2           In its unpublished opinion affirming petitioner's judgment of conviction on appeal, the

3    California Court of Appeal for the Third Appellate District provided the following factual

4    summary:

5                    Defendant Steven Refugio Rodriguez pled no contest[2] to several
                charges of assault on a peace officer with a machine gun, discharge
6                of a firearm from a vehicle, felony evading a peace officer, and being
                a prohibited person with a firearm, and stipulated to a 21-year
7                sentence.  This plea was in exchange for dismissal of numerous other
                charges.  Thereafter, defendant filed a motion to withdraw the plea
8                on the basis that it was not knowing, intelligent, and voluntary.  At
                the hearing, the trial court denied defendant's request for a
9                continuance, denied his motion, and sentenced him to 21 years in
                prison. . . .[¶] . . . .
10

11                In September 2017, defendant was charged with three counts of
                attempted murder of a peace officer . . . three counts of assault on a
12                peace officer with a semiautomatic firearm. . ., two counts of
                shooting at an occupied motor vehicle . . . , two counts of permitting
13                a passenger to shoot from a vehicle . . ., one count of evading a peace
                officer . . ., two counts of premeditated attempted murder . . ., two
14                counts of assault with a semiautomatic firearm . . . , one count of
                possession of a firearm with a prior violent felony conviction . . .,
15                one count of possession of ammunition . . ., one count of bigamy . . .
                , and one count of criminal street gang activity . . . .  Defendant was
16                also charged with the special allegations that the offense was
                committed for the benefit of, at the direction of, or in association with
17                a criminal street gang . . . , in the commission of the felony a principal
                used a firearm . . ., defendant was previously convicted of the serious
18                felony of robbery, and defendant served several prior prison terms
                and did not remain free of committing an offense resulting in a felony
19                conviction during a period of five years subsequent to the conclusion
                of said terms. . . .
20
                In October 2017, the trial court granted defendant's Faretta v.
21                California (1975) 422 U.S. 806 motion to represent himself.  The trial
                court appointed standby counsel.  In February 2019, defendant
22                withdrew his self-representation status and the trial court appointed
                counsel.  Four months later, the court granted another Faretta motion
23                and again appointed standby counsel.

24                In January 2021, defendant initialed and signed a plea agreement,
                entering pleas of no contest to three counts of assault on a peace

25   ────────────────
     [1]  The facts are taken from People v. Rodriguez, No. C093743 (Dec. 22, 2021), a copy of which
26   was lodged by respondent as ECF No. 18-14 at 1-5.)

27   [2]  Under California law, a plea of no contest is equivalent to a guilty plea.  Cal. Penal Code
     § 1016; People v. Mendez, 19 Cal.4th 1084, 1094-95, 81 Cal.Rptr.2d 301 (1999).
28

officer with a machine gun, [fn2] and as to each of these counts, defendant admitted an arming enhancement.  . . . .  Defendant also pled no contest to one count of discharge of a firearm from a vehicle, one count of evading a peace officer, and one count of possession of a firearm with a prior violent felony conviction.  Defendant agreed to a stipulated term of 21 years in prison.  The People dismissed the remaining counts and the remaining allegations and enhancements were stricken.

[FN 2:  The originally charged counts of assault on a peace officer with a semiautomatic firearm were amended to assault on a peace officer with a machine gun.]

During the change of plea hearing, the trial court addressed defendant:  "Mr. Rodriguez, what I anticipate happening this morning is that Count 1 will be amended to reflect violation of . . . [s]ection 245[, subdivision (d)](3), which is assault with a machine gun on a police officer.  That will be amended from the attempt[ed] murder charge. Count 1 applies to Officer Clyborn.  And there will be an amendment as to the enhancement on that charge, which will be a [section]12022[, subdivision (a)](1), principal being armed.

"Count 2 will, likewise, be amended to reflect a violation of . . . [s]ection 245[, subdivision (d)](3).  Same enhancement pursuant to . . . [s]ection 12022[, subdivision (a)](1), principal armed.  That applies to Officer Tacker.  Count 3 will be amended to reflect a violation of . . . [s]ection 245[, subdivision (d)](3).  Same enhancement pursuant to . . . [s]ection 12022[, subdivision (a)](1).

"For some reason, on my plea form here, there is a typo as to the enhancements. I have (A)(2) on Counts 2 and 3.  I'm going to amend that right now. Count 9, is not going to be amended. Count 10 and Count 16, it's my understanding that you are going to enter pleas of no contest to those six counts. Now, the maximum exposure for those six counts is actually 21 years 8 months. However, that's not going to be the sentence because Count 16 is going to run concurrent.

"So the total prison sentence would be 21 years in [s]tate [p]rison, is that your understanding?"

Defendant responded, "Yes."

The trial court determined the plea was knowledgeable, intelligent, and voluntary.  The court accepted the plea and set the matter for sentencing in March 2021.

In February 2021, defendant filed a motion to withdraw his plea.  The bases for defendant's motion were that his plea was not entered knowingly, intelligently, and of his own free will, and that there existed outstanding discovery.  Defendant argued he was missing outstanding discovery, that he was unaware that the machine gun charge was a greater offense than the semiautomatic rifle charge, the plea process was undertaken by his standby counsel without his participation, and he was not given adequate time to consider the plea.

The People filed a seven-page opposition on March 11, 2021. The hearing on defendant's motion took place on March 15, 2021. During the hearing, defendant indicated he did not have adequate time to review the People's opposition to his motion and would like a continuance to formulate a response.

Defendant stated: "I just received the  -- there has been a finding issue with the service for my gang expert as well as my legal runs, and Mr. Valdez.  I just barely received the People's opposition to the [d]efendant's motion right now.  If it pleases the Court, it's seven pages long.  There is [sic] authorities attached.  And I would like to request a short continuance to respond.  I'll do an oral argument, if that's fine with the Court.

"But I do not know the legalities of her motion, because I don't have my tablet with me.  I can't research it at the law library, because I don't have nexus [sic] with me at this point in time to respond to the motion.  I was prepared to do an oral argument if there wasn't no [sic] opposition motion.  But, like I said, now that there is an opposition motion, it's going to change the trajectory of my legal arguments that was [sic] set forth for the motion."

The trial court responded:  "I don't think anything contained within her motion is going to change your arguments in any way, shape, or form.  Take a minute to look at it.  The reality is, all she does is go through your plea.  And she's arguing that you made a knowing, intelligent, voluntary waiver of your plea.  That's pages 1 through 4. The legal arguments that she makes are just that there is no defect in your plea.

"That you can't take back your plea just because you changed your mind.  And asks me to take judicial notice of your plea form.  I don't see how that response is going to alter your argument in any way."

Defendant responded:  "Okay. Well, if the Court's not going to grant the motion, I'm going to object. And I'm going to be compelled to argue here today as I am, pro per."

Defendant and the trial court engaged in significant discussions on the record concerning the merits of his motion.  Specifically, defendant raised concerns about payment of his gang expert, issues with outstanding discovery, and his argument that he did not understand the nature of the charges he was pleading guilty to at the time he pled guilty.  The trial court ultimately denied the motion to withdraw the plea, concluding defendant made a knowing, voluntary, and intelligent waiver of his rights.  Defendant "[f]ully understood what was happening when he entered his pleas.  That's borne out by the transcript, by the plea form, and by my own observations of [defendant] when I took the plea."

The trial court sentenced defendant to a determinate term of 21 years in prison pursuant to the plea agreement.  Defendant filed a timely notice of appeal and the trial court issued a certificate of probable cause.

1   People v. Rodriguez, No. C093743, 1-5 (Dec. 22, 2021).  (ECF No. 18-14 at 1-5.)  After

2   independently reviewing the record, this court finds the appellate court's summary accurate and

3   adopts it herein.

4   IV.  Standards for a Writ of Habeas Corpus

5        An application for a writ of habeas corpus by a person in custody under a judgment of a

6   state court can be granted only for violations of the Constitution or laws or treaties of the United

7   States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation

8   or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire,

9   502 U.S. 62, 67-68 (1991).

10       Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

11  corpus relief:

12           An application for a writ of habeas corpus on behalf of a person in
             custody pursuant to the judgment of a State court shall not be granted
13           with respect to any claim that was adjudicated on the merits in State
             court proceedings unless the adjudication of the claim -
14
15           (1) resulted in a decision that was contrary to, or involved an
             unreasonable application of, clearly established Federal law, as
             determined by the Supreme Court of the United States; or
16
17           (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
             State court proceeding.
18

19  28 U.S.C. § 2254(d).

20       For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of

21  holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v.

22  Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45

23  (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S.

24  362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly

25  established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859

26  (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may

27  not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a

28  specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S.

1   Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).

2   Nor may it be used to "determine whether a particular rule of law is so widely accepted among

3   the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.

4   Id.  Further, where courts of appeals have diverged in their treatment of an issue, there is no

5   "clearly established federal law" governing that issue.  See Carey v. Musladin, 549 U.S. 70, 77

6   (2006).

7          A state court decision is "contrary to" clearly established federal law if it applies a rule

8   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

9   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

10  Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant

11  the writ if the state court identifies the correct governing legal principle from [the Supreme

12  Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[3]

13  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; see also Chia v.

14  Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

15  the writ simply because that court concludes in its independent judgment that the relevant state-

16  court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

17  application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

18  550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

19  in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state

20  court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes

21  federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

22  court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v.

23  Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus

24  from a federal court, a state prisoner must show that the state court's ruling on the claim being

25  presented in federal court was so lacking in justification that there was an error well understood

26  _____

27  [3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28  384 F.3d 628, 638 (9th Cir. 2004)).

1    and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at

2    103.

3           The court looks to the last reasoned state court decision as the basis for the state court

4    judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

5    If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

6    previous state court decision, this court may consider both decisions to ascertain the reasoning of

7    the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

8    federal claim has been presented to a state court and the state court has denied relief, it may be

9    presumed that the state court adjudicated the claim on the merits in the absence of any indication

10   or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

11   may be overcome by a showing "there is reason to think some other explanation for the state

12   court's decision is more likely."  Id. at 99-100.  Similarly, when a state court decision on

13   petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

14   habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

15   merits.  Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98).  If a

16   state court fails to adjudicate a component of the petitioner's federal claim, the component is

17   reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

18   V.  Petitioner's Claims

19          A.  Denial of Continuance

20          The Parties' Arguments

21          Petitioner claims that the trial court abused its discretion and violated petitioner's rights to

22   due process and the effective assistance of counsel when it denied his request for a continuance so

23   he could review the prosecutor's opposition to the motion to withdraw the guilty plea, research

24   the cases argued in the opposition, and prepare a written reply.  He relies on various California

25   cases and Faretta.  (ECF No. 2 at 18-25.)

26          Respondent counters that to the extent petitioner renews the claim raised on appeal, it fails

27   because, in addition to the state appellate court's discussion:

28   ////

7

> reasonable jurists reading only Supreme Court holdings on the
> Opinion's date could doubt:
>
> (a) that claimed abuse of discretion implicates the Constitution, (b)
> that a "general appeal to a constitutional guarantee as broad as due
> process" has "substance" even as to preparing for a constitutionally-
> guaranteed trial, much less a not-constitutionally-guaranteed reply to
> opposition to one's own after-conviction motion filed in pro per, or
> (c) that the Constitution governs effectiveness of an attorney who is
> discretionarily appointed for a self-represented defendant.

(ECF No. 19 at 6) (all footnotes omitted).

In reply, petitioner contends that "the trial court knew the clandestine plea discussions would not be accepted by petitioner once he found out the plea was illegal and amended greater in time." (ECF No. 24 at 4.)  Petitioner claims the rejection of the continuance violated his constitutional rights, citing various cases from California state courts, but adding "accord" Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  (ECF No. 24 at 3-4.)  Petitioner also reiterates his claim that the decision violated his rights under Faretta.

State Court Decision

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal on petitioner's direct appeal.  The state court addressed this claim as follows:

> Defendant argues the trial court abused its discretion when it denied
> his request for a continuance of the hearing on his motion to
> withdraw his plea.
>
> Courts, judicial officers, and counsel owe a duty to expedite criminal
> proceedings "to the greatest degree that is consistent with the ends of
> justice." (§ 1050, subd. (a).)  Accordingly, motions to continue are
> disfavored and granted only on a showing of good cause.  (Id., subd.
> (e); Cal. Rules of Court, rule 4.113.)  "An important factor for a trial
> court to consider is whether a continuance would be useful." (People
> v. Beeler (1995) 9 Cal.4th 953, 1003.)  "[T]o demonstrate the
> usefulness of a continuance a party must show both the materiality
> of the evidence necessitating the continuance and that such evidence
> could be obtained within a reasonable time."  (Ibid.)  The decision to
> grant or deny a continuance rests within the sound discretion of the
> trial court.  (People v. Beames (2007) 40 Cal.4th 907, 920.)
>
> A trial court may not exercise its discretion over continuances so as
> to deprive the defendant or his attorneys of a reasonable opportunity
> to prepare.  (People v. Snow (2003) 30 Cal.4th 43, 70.)  However,
> "the party challenging a ruling on a continuance bears the burden of
> establishing an abuse of discretion, and an order denying a
> continuance is seldom successfully attacked.  [Citation.]  [¶]  Under

8

this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (People v. Beames, supra, 40 Cal.4th at p. 920.) "A reviewing court considers the circumstances of each case and the reasons presented for the request to determine whether a trial court's denial of a continuance was so arbitrary as to deny due process." (People v. Doolin (2009) 45 Cal.4th 390, 450.) Not every denial of a request for more time violates due process, "even if the party seeking the continuance thereby fails to offer evidence." (Beames, supra, at p. 921; accord Ungar v. Sarafite (1964) 376 U.S. 575, 589.)

All circumstances being considered, the trial court did not abuse its discretion in denying defendant's request for a continuance. Defendant argues that the lack of a continuance resulted in denial of a reasonable opportunity to prepare, however the proof of service on the opposition indicates it was served electronically on March 10, 2021, five days before the hearing. Further, even if defendant did not receive the opposition on March 10, the trial court offered defendant time to fully read the opposition, which directly addressed arguments made by defendant in his moving papers. As the trial court indicated, the opposition was only seven pages long, of which one and a half pages had the legal standard for withdrawing a previously entered guilty plea. Defendant's motion also sets out this legal standard, and includes cites to some of the same cases cited in the People's opposition. The opposition did not include any detailed scrutiny of case law or comparisons of defendant's circumstances to a specific precedent. The opposition focused instead on the People's argument that defendant entered into the plea agreement with knowledge of its terms and received a "justly-bargained plea." Thus, the crux of the opposition's argument relied on facts known to defendant prior to the hearing and relied on the same legal standard as defendant's moving papers.

Defendant was given the opportunity to read and respond to these arguments during the hearing on his motion to withdraw his plea. After reviewing the opposition, defendant did not point to any specific legal or factual issue that he needed additional time to adequately address. The trial court engaged in extensive discussion with him concerning the claimed reasons for his motion, including his arguments that he did not enter into the plea agreement with full knowledge of its terms. Defendant articulated the details of his complaints on the record, and after full consideration of the arguments, the trial court denied his motion to withdraw.

Defendant has failed to establish that the trial court's denial of a continuance was so arbitrary as to deny him due process, or that a continuance would have been useful. (See People v. Doolin, supra, 45 Cal.4th at p. 450; People v. Beeler, supra, 9 Cal.4th at p. 1003.) Acting as his own counsel, the record demonstrates defendant was able to adequately respond to the arguments raised in the opposition, as well as to engage with the trial court as to the validity of his claimed bases for the withdrawal of his plea. In determining

////

1            defendant was adequately prepared to respond to the opposition, the
2            trial court did not exceed the bounds of reason.

3    (ECF No. 18-14 at 5-6.)

4        <u>Governing Standards</u>

5            Habeas corpus relief is available only if the petitioner's conviction or sentence is "in

6    violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  <u>See</u>

7    <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  "The matter of continuance is traditionally within

8    the discretion of the trial judge, and it is not every denial of a request for more time that violates

9    due process even if the party fails to offer evidence or is compelled to defend without counsel."

10   <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964).  In other words, the denial of a motion for a

11   continuance is generally a matter of state law and only violates due process when it is arbitrary.

12   <u>Id.</u>; <u>U.S. v. Rivera-Guerrero</u>, 426 F.3d 1130, 1138 (9th Cir. 2005).

13           "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary

14   as to violate due process."  <u>Ungar</u>, 376 at 589.  Instead, a court must look at the circumstances of

15   each individual case with special consideration given to "the reasons presented to the trial judge

16   at the time the [continuance was] request is denied."  <u>Id.</u> at 589-90 (citations omitted).  The Ninth

17   Circuit identified four factors to help guide the analysis:  (1) petitioner's diligence in preparing

18   his case; (2) the likelihood that a continuance would serve a useful purpose; (3) whether a

19   continuance would inconvenience the court, the parties, or the witnesses; and (4) whether

20   petitioner was prejudiced by the denial.  <u>Rivera-Guerrero</u>, 426 F.3d at 1138-43.  Of the four

21   factors, only the fourth is dispositive.  <u>Id.</u> at 1139.  Because trial courts have broad discretion

22   when considering whether to continue a trial, the denial of a motion for more time violates due

23   process only in rare cases.  <u>Ungar</u>, 376 U.S. at 589; <u>see also</u> <u>Morris v. Slappy</u>, 461 U.S. 1, 11-12

24   (1983) (only unreasonable and arbitrary "'insistence upon expeditiousness in the face of a

25   justifiable request for delay' violates the right to the assistance of counsel").

26       <u>Analysis</u>

27           Here, petitioner's claim that the trial court abused its discretion in denying petitioner's

28   request for a continuance of the hearing on his motion to withdraw his guilty plea is a state law

1   issue.  Because the claim is solely based on an error under California law, it fails to state a basis

2   for federal habeas relief.  See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (petitioner

3   "may not[ ] transform a state-law issue into a federal one merely by asserting a violation of due

4   process"), cert. denied, 522 U.S. 881 (1997); Laborin v. Clark, 2010 WL 3835778, at *4 (E.D.

5   Cal. Sept. 30, 2010) (no cognizable federal habeas claim where petitioner claimed state court's

6   denial of continuance motion constituted an abuse of discretion).

7          Therefore, the question is whether the trial court's denial of petitioner's motion for a

8   continuance was so arbitrary as to violate petitioner's due process rights.

9          The undersigned finds that the state appellate court reasonably determined that the trial

10  court's decision was not so arbitrary as to violate due process.  The trial court considered the

11  basis for petitioner's requested continuance and found it lacking.  As the appellate court found,

12  the trial court gave petitioner time to review the seven page opposition, noting that all the

13  prosecution did was to "go through [petitioner's] plea," simply arguing that there was no defect in

14  the plea.  (ECF No. 18-10 at 5.)  Review of the prosecution's opposition confirms that the

15  opposition did not have any detailed scrutiny of case law or comparisons of defendant's

16  circumstances to a specific precedent.  (ECF No. 18-8 at 279-85 (Clerk's Transcript ("CT") 1969-

17  76).)  In addition, petitioner argued his motion in detail, engaging the trial judge on multiple

18  occasions, and demonstrating he was prepared to argue his motion and address the prosecution's

19  opposing arguments.  (ECF No. 18-10, passim (2RT).)  On this record, the undersigned cannot

20  find that petitioner suffered actual prejudice from the denial of the continuance.  See Gallego v.

21  McDaniel, 124 F.3d 1065, 1072 (9th Cir. 1997) ("In the absence of a showing of actual prejudice

22  to [the petitioner's] defense resulting from the trial court's refusal to grant a continuance, it

23  cannot be said that the district court erred by denying relief on this ground.").

24         Finally, petitioner's reliance on Faretta is unavailing.  Under the Sixth Amendment, a

25  defendant in a state court criminal proceeding is entitled to assert the right to self-representation.

26  Faretta v. California, 422 U.S. 806, 821, 832 (1975).  Although Faretta entitles a criminal

27  defendant the right to represent himself at trial, "Faretta says nothing about any specific legal aid

28  that the State owes a pro se criminal defendant."  Kane v. Espitia, 546 U.S. 9, 10 (2005) (per

11

curiam).  Moreover, there is no clearly established constitutional right to effective assistance of

standby counsel or to receive correct advice from standby counsel in the plea bargaining process.

See Locks v. Sumner, 703 F.2d 403, 407-08 (9th Cir. 1983) (holding that the right to advisory

counsel is "not of constitutional dimension"); United States v. Kienenberger, 13 F.3d 1354, 1356

(9th Cir. 1994) (holding that a district court has discretion in deciding whether to appoint standby

counsel).  Therefore, petitioner's reliance on Faretta is unavailing.

Accordingly, petitioner's first claim should be denied.

B.  Denial of Motion to Withdraw Plea

The Parties' Arguments

Petitioner argues that the trial court committed error by denying the motion to withdraw

the plea because petitioner was rushed to accept the plea because standby counsel was no longer

assigned, and the next court date was January 11, 2021.  Further, at the January 8, 2021 hearing,

petitioner was not aware the charges would be amended to include 245(D)(3), and he was not

prepared for trial because he did not have all the necessary discovery and thought he would have

to go to trial without an adequately prepared gang expert.  (ECF No. 2 at 27.)  For all those

reasons, petitioner accepted the plea under duress, impulsively, and contrary to his right and

desire to have a jury trial.  Petitioner argues his standby counsel (also his second cousin by

blood), was concerned at the unexpected court hearing, which "coerced" petitioner to take the

plea because standby counsel had been excused on December 14, 2020.  (ECF No. 2 at 33.)

Petitioner contends he was confused and believed he pleaded no contest to the assaults charged in

counts 4, 5 and 6, assault with a semi-automatic rifle on an officer under P.C. 245(D)(2).  (ECF

No. 2 at 35.)  Further, he acted under duress because he knew he would be without funds to retain

a gang expert and without a complete review of all necessary discovery.  Finally, petitioner

argues that his plea was not voluntary and intelligent because his standby counsel was working

with the prosecution and intimidated petitioner with "losing trial and getting life in prison."  (ECF

No. 2 at 36.)  Petitioner objects that this case is not a matter of "buyer's remorse," but that he did

not understand the terms of the plea deal as required under Faretta and accepted the plea deal

under duress.  (ECF No. 2 at 37.)

1    Respondent argues that to the extent petitioner renews the claim raised on appeal, it fails

2    because, in addition to the state appellate court's discussion,

3            reasonable jurists at finality could find it not apparent, and
             fairminded jurists reading only Supreme Court holdings on the
4            Opinion's date could doubt: (a) that one lacked legally-required
             knowledge of consequences of admitted charges when one
5            personally agreed in writing to admit specific charges to get a twenty-
             one-year term (ECF 18-8 at 144) and after one's plea to precisely
6            those charges one received precisely that term (id. at 296-98; ECF
             18-9 at 4-6); (b) that any alleged nondisclosure of evidence to
7            undercut prosecution efforts to prove guilt in a trial constitutionally
             mattered, when one agreed instead to be convicted without a trial
8            (ECF 18-9 at 8); (c) that a right constitutionally exists to represent
             that one's plea is free and voluntary, not a result of undisclosed
9            promises or threats (id. at 9), but later change one's mind and invoke
             judicial process to pursue a factual premise that the contrary is true;
10           or (d) that on the list of things that must not have "induced" a plea,
             alleged impulsiveness appears.
11

12   (ECF No. 19 at 8-9) (all footnotes omitted).)

13           In reply, petitioner claims that his plea was not voluntary and intelligent because he had

14   not received outstanding and exculpatory discovery, including interviews with gang officers, in

15   violation of Brady v. Maryland, 373 U.S. 83 (1963).  (ECF No. 24 at 6-11.)  Petitioner claims he

16   was left out of plea negotiations which coerced the plea in a rapid resolution and deprived him of

17   the knowledge of amended charges that resulted in a 21 year sentence instead of the 18 year

18   sentence it should have been.  (ECF No. 24 at 18.)

19           State Court Decision

20           The last reasoned rejection of petitioner's claim is the decision of the California Court of

21   Appeal on petitioner's direct appeal.  The state court addressed this claim as follows:

22           Defendant argues the trial court committed error when it denied
             defendant's motion to withdraw his no contest plea because he has
23           shown by clear and convincing evidence there was good cause to
             withdraw the plea. Defendant asserts he was unaware that the
24           indictment would be amended with charges of assault on a peace
             officer with a machine gun, as opposed to assault on a peace officer
25           with a semiautomatic rifle. As the original charges were lesser than
             the amended charges, defendant argues that if he had been aware of
26           the proposed amendment, he never would have accepted the deal.

27           Section 1018 provides that, at any time before judgment, the court
             may, "for a good cause shown, permit the plea of guilty to be
28           withdrawn and a plea of not guilty substituted. . . .  This section shall

13

be liberally construed to [a]ffect these objects and to promote justice." Although the statute directs liberal interpretation, case law implementing section 1018 establishes a rigid standard for overturning a guilty plea. Courts have stated that " 'pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' " (People v. Weaver (2004) 118 Cal.App.4th 131, 146.)   "A plea may not be withdrawn simply because the defendant has changed his [or her] mind." (People v. Nance (1991) 1 Cal.App.4th 1453, 1456.)

A defendant seeking to withdraw his plea has the "burden to produce evidence of good cause by clear and convincing evidence." (People v. Wharton (1991) 53 Cal.3d 522, 585.) To demonstrate good cause, a defendant must show that his plea was not the product of his free judgment. "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea." (People v. Cruz (1974) 12 Cal.3d 562, 566.)   "The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake. (In re Moser (1993) 6 Cal.4th 342, 352.)"   (People v. Breslin (2012) 205 Cal.App.4th 1409, 1416.)   We review a claim of an erroneous denial of a motion to withdraw a plea for abuse of discretion. (People v. Holmes (2004) 32 Cal.4th 432, 442-443.)

As detailed above, at the change of plea hearing, the trial court walked defendant step-by-step through the charges he was pleading no contest to, including the fact that the charging document would be amended to reflect violations of "[s]ection 245[, subdivision (d)](3), which is assault with a machine gun on a police officer."   The trial court explained that defendant's maximum exposure for what he was pleading to was 21 years eight months, but that defendant would be sentenced to 21 years in prison.   The trial court specifically inquired whether defendant understood these amended charges and the total prison sentence.   Defendant responded with an unequivocal "yes."

At the hearing on the motion to withdraw his plea, the trial court listened to and questioned defendant as he argued that the plea was not knowing, intelligent, and voluntary.   The trial court noted that the plea form itself listed that defendant was pleading no contest to "Assault w/machine gun on officer" instead of simply listing the applicable Penal Code section.   The trial court indicated it had done this so defendant would understand exactly what he was pleading to, as well as the minimum exposure and maximum exposure.

The trial court also noted that it had witnessed defendant over numerous appearances and concluded: "[Y]ou're probably one of the smartest defendants that I have ever witnessed in 22 years of practicing criminal law.   So, it doesn't work for you to plead ignorance at this point.   Because I have stacks of very articulate motions from you.   And for you to say that now, all of a sudden, you don't understand what's going on, belies the fact that you're a very good attorney."   The trial court further addressed defendant's concerns regarding discovery issues and his complaints about his gang expert.

14

1
2
3
4
5
6
7
8
9
10

> The trial court did not engage in an abuse of discretion in denying defendant's motion to withdraw his no contest plea.  The trial court made numerous efforts to ensure that defendant's plea was knowing, intelligent, and voluntary, including by spelling out the charges on the plea form, walking defendant through the charges and sentence at the plea hearing, and addressing all of defendant's concerns at the hearing on defendant's motion to withdraw his plea.  We are not persuaded by defendant's contention he acted in duress because he thought he would be required to go to trial without the benefit of all discovery, as the trial court confirmed with the People that defendant had indeed received outstanding discovery documents.  Further, the discovery was related to the gang activity charges, which were all dismissed as part of defendant's plea.  Defendant argued that funding for his gang expert had been denied, but the trial court pointed out that the trial court had already authorized "many tens of thousands of dollars" for this expense.  While defendant may have changed his mind subsequent to entering his plea, such circumstances do not provide the good cause necessary for withdrawal.

11    (ECF No. 18-14 at 6-8.)

12        Analysis and Applicable Law

13        Again, whether the state trial court properly exercised its discretion in denying petitioner's

14    motion to withdraw his guilty plea concerns an issue of state law that is not cognizable on federal

15    habeas review.  Langford, 110 F.3d at 1389.  A state prisoner is entitled to habeas relief only if he

16    is being held in custody in violation of the constitution, laws or treaties of the United States

17    Constitution. 28 U.S.C. § 2254(a).  The California appellate court analyzed this claim solely

18    under an abuse of discretion analysis pursuant to California law because petitioner presented a

19    violation of state law and did not allege a constitutional violation.  (ECF No. 18-14 at 6-8.)  Any

20    alleged error is one of state law which is not cognizable in a federal habeas petition.  Plummer v.

21    McDaniel, 2009 WL 10677901, at *4-5 (D. Nev. Mar. 16, 2009), aff'd, 444 F. App'x 177 (9th

22    Cir. 2011).

23        Moreover, "a guilty plea represents a break in the chain of events which has preceded it in

24    the criminal process.  When a criminal defendant has solemnly admitted in open court that he is

25    in fact guilty of the offense with which he is charged, he may not thereafter raise independent

26    claims relating to the deprivation of constitutional rights that occurred prior to the entry of the

27    guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea." Tollett

28    v. Henderson, 411 U.S. 258, 267 (1973).  Petitioner makes various claims concerning his inability

1    to obtain discovery prior to the entry of his plea.  In addition to failing to show a violation of

2    clearly established federal law, under <u>Tollett</u>, such claims are not cognizable on federal habeas

3    review.  See <u>Ortberg v. Moody</u>, 961 F.2d 135, 137-38 (9th Cir.), <u>cert. denied</u>, 506 U.S. 878

4    (1992) (holding that claims alleging constitutional violations that occurred prior to the entry of a

5    plea were not cognizable under <u>Tollett</u>).

6          In any event, the record establishes that the trial court's denial of the motion to withdraw

7    the guilty plea did not violate petitioner's federal constitutional rights.  It is clearly established

8    federal law that a guilty plea must be knowing, intelligent and voluntary.  <u>Brady v. United States</u>,

9    397 U.S. 742, 748 (1970); <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969).  The record must

10   reflect that a criminal defendant pleading guilty understands, and is voluntarily waiving, his rights

11   to the privilege against compulsory self-incrimination, to trial by jury and to confront one's

12   accusers.  <u>Boykin</u>, 395 U.S. at 243.  However, "beyond these essentials, the Constitution 'does

13   not impose strict requirements on the mechanics of plea proceedings.'"  <u>Loftis v. Almager</u>, 704

14   F.3d 645, 648 (9th Cir. 2012) (quoting <u>United States v. Escamilla-Rojas</u>, 640 F.3d 1055, 1062

15   (9th Cir. 2011), <u>cert. denied</u>, 133 S. Ct. 101 (2012)).  <u>See also</u> <u>Wilkins v. Erickson</u>, 505 F.2d 761,

16   763 (9th Cir. 1974) (specific articulation of the <u>Boykin</u> rights "is not the sine qua non of a valid

17   guilty plea.").  Rather, if the record demonstrates that a guilty plea is knowing and voluntary, "no

18   particular ritual or showing on the record is required."  <u>United States v. McWilliams</u>, 730 F.2d

19   1218, 1223 (9th Cir. 1984).  The long-standing test for determining the validity of a guilty plea is

20   "'whether the plea represents a voluntary and intelligent choice among the alternative courses of

21   action open to the defendant.'"  <u>Parke v. Raley</u>, 506 U.S. 20, 29 (quoting <u>North Carolina v.</u>

22   <u>Alford</u>, 400 U.S. 25, 31 (1970)).  "The voluntariness of [a petitioner's] guilty plea can be

23   determined only by considering all of the relevant circumstances surrounding it."  <u>Brady</u>, 397

24   F.2d at 749.

25         In <u>Blackledge v. Allison</u>, 431 U.S. 63 (1977), the Supreme Court addressed the

26   presumption of verity to be given the record of plea proceedings when the plea is subsequently

27   subject to a collateral challenge.  While noting that the defendant's representations at the time of

28   his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his

16

1    plea, the court stated that, nonetheless, the defendant's representations, as well as any findings

2    made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral

3    proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."

4    Blackledge, 431 U.S. at 74.

5          "[I]t is the policy of the law to hold litigants to their assurances" at a plea colloquy.

6    United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997) (citations, internal quotation

7    marks, and alteration omitted).  A petitioner "should not be heard to controvert his Rule 11

8    statements in a subsequent § 2255 motion unless he offers a valid reason why he should be

9    permitted to depart from the apparent truth of his earlier statement[s]."  United States v. Butt, 731

10    F.2d 75, 80 (1st Cir. 1984) (quoting Crawford v. United States, 519 F.2d 347 (4th Cir. 1975)).

11    "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a

12    Rule 11 colloquy is conclusively established."  United States v. Lemaster, 403 F.3d 216, 221 (4th

13    Cir. 2005) (quoting United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003.)

14          Here, the state court record includes petitioner's signed "Plea Form, With Explanations

15    and Waiver of Rights -- Felony" (hereafter "waiver").  (ECF No. 18-8 at 144-50 (CT 1832-40).)

16    The waiver states that petitioner is pleading no contest to three counts of "assault w/ machine gun

17    on officer," with a minimum of 6 years and a maximum of 12 years, in violation of California

18    Penal Code § 12022(a)(1) – principle armed.  (ECF No. 18-8 at 144.)  The waiver further states

19    that petitioner faced a maximum of 21 years, 8 months, but will be sentenced to 21 years in state

20    prison.  (ECF No. 18-8 at 144.)  The waiver provides that petitioner is also pleading no contest to

21    one count of discharge of firearm from vehicle (count 9), felony evading VC 2600.2 (count 10),

22    and prohibited person w/ firearm (count 16)."  (ECF No. 18-8 at 144.)  Petitioner acknowledged

23    that he had discussed the negotiated plea with his attorney, that his attorney had answered all of

24    his questions, and that he and his attorney had discussed possible defenses and motions.  (ECF

25    No. 18-8 at 148.)

26          Petitioner also waived his Constitutional rights to a jury trial and court trial, the right to

27    confront and cross-examine witnesses, the right to remain silent and not to incriminate himself,

28    and the right to produce evidence and to present a defense, including the right to testify on his

own behalf.  (ECF No. 18-8 at 147, 148.)  He marked that he understood that he was, "in fact, incriminating [himself] with his plea."  (Id.)  Petitioner agreed that no one had made any threats; used any force against him, his family, or loved ones; or made any promises to him, except as provided in the waiver form, to induce him to enter his plea and that he was entering the plea voluntarily and of his own free will.  (ECF No. 18-8 at 148.)  Petitioner also had notice of the nature of the charges against him, and the grand jury transcript provided the factual basis for the plea.  (ECF Nos. 18-1 at 36-124 (CT 1-89); 18-9 at 5-6; 10-11.)  See Marshall v. Lonberger, 459 U.S. 422, 436 (1983) (in order for a plea to be voluntary, an accused must receive notice of the nature of the charge against him, "the first and most universally recognized requirement of due process") (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).  Also contained in the waiver form is petitioner's counsel's declaration that counsel had read and explained the waiver form to petitioner and that the attorney concurred in petitioner's decision to plead no contest, joined in the waiver, and stipulated that there is a factual basis for the plea.  (ECF No. 18-8 at 149.)

On January 8, 2021, in open court during the change of plea hearing, the trial judge reappointed standby counsel for petitioner.  (ECF No. 18-9 at 4.)  Petitioner was advised by the trial judge that he anticipated Counts 1 through 3, attempted murder of a police officer, would be amended to reflect a violation of California Penal Code Section 245(D)(3), which is "assault with a machine gun on a police officer," and that although the maximum exposure for the six counts now charged is 21 years 8 months, petitioner would be sentenced to 21 years because count 16 would run concurrently.  (ECF No. 18-9 at 5.)  Petitioner responded that he understood.  The trial judge also stated that all of the remaining charges and enhancements would be dismissed in light of petitioner's plea, and that the gang allegations would be dismissed "with prejudice," meaning they "cannot be re-filed."  (ECF No. 18-9 at 5-6.)

Subsequently, the trial judge asked petitioner whether he waived his right to a court trial, jury trial, his right to see, hear and confront the witnesses called against petitioner, his right to have the court issue subpoenas on petitioner's behalf to make his witnesses and evidence be brought to court for his defense, his right to testify and present evidence, and his right to remain silent, and petitioner responded affirmatively to all, confirming his waiver of constitutional rights.

18

(ECF No. 18-9 at 7-9.)  The trial judge then questioned petitioner as to whether he was freely and

voluntarily pleading guilty, in the following plea colloquy:

> The Court:  Has anyone made you any promises to get you to enter
> into this deal other than what we have discussed today on the record?
>
> Petitioner:  No.
>
> The Court:  Has anyone threatened you in any way to get you to enter
> into this deal?
>
> Petitioner:  No.
>
> The Court:  Are you entering into this deal freely and voluntarily?
>
> Petitioner:  Yes, I am.
>
> The Court:   Are you currently under the influence of alcohol,
> narcotics, marijuana, medication or any other substance that is
> affecting your decision-making ability in a negative way?
>
> Petitioner:  Not one bit, sir.
>
> The Court:  Are you supposed to be taking any medication that you're
> not taking and that is affecting your decision-making ability?
>
> Petitioner:  Not at all.
>
> The Court:  Do you feel you have had enough time to talk to [standby
> counsel] about your rights, the consequences of your plea, and any
> possible defenses?
>
> Petitioner:  I think so.  Yes.

(ECF No. 18-9 at 9-10.)  All parties stipulated to a factual basis using the grand jury testimony

(CT 128-702) as the basis of the plea and waived full reading of the amended indictment.  (ECF

No. 18-9 at 10.)  Petitioner pled no contest to the amended counts 1, 2 and 3, and no contest to

counts 9, 10 and 16.  (ECF No. 18-9 at 12.)  The trial judge found that petitioner was fully

informed of and understood his constitutional rights, that he made a knowing, intelligent, free and

voluntary waiver of those rights, and that there was a factual basis for the plea, accepted

petitioner's plea and found petitioner guilty.  (ECF No. 18-9 at 13.)

        The trial judge acknowledged receipt of petitioner's signed plea form and waiver of his

felony rights.  At the judge's request, petitioner confirmed that he had signed and initialed the

////

1    waiver of rights form, and the trial judge incorporated the written plea form into petitioner's

2    waiver of rights in open court.  (ECF No. 18-9 at 13-14.)

3        There is nothing in the record before this court to overcome the presumption that

4    petitioner pled guilty voluntarily and intelligently.  Petitioner's claim that he was unaware of an

5    increase in prison time based on the amendment of counts one through three to reflect assault on a

6    peace officer with a machine gun rather than attempted murder, or that he was confused about the

7    amount of time he would serve is belied by the record.  Indeed, his argument that he thought he

8    was pleading to the assault with a semiautomatic weapon in counts 4, 5, and 6 is belied by the

9    express writing on the waiver form which does not include such counts.  (ECF No. 18-8 at 144.)

10   While the written plea form does not reference 245(D)(3), neither does it reference 245(D)(2).

11   (Id.)

12       Petitioner informed the court in writing and orally that he understood his punishment and

13   the consequences of his plea.  The waiver of rights form, which petitioner initialed and signed,

14   fully informed him about these matters.  Specifically, petitioner was informed and acknowledged

15   that his plea included the amended language referencing a machine gun and confirmed the 21

16   year 8 month maximum sentence he faced, but that he would be sentenced to 21 years, and he

17   was so sentenced.  (ECF No. 18-10 at 19.)

18       On March 15, 2021, at the hearing on his motion to withdraw his plea, petitioner claimed

19   that he was "just ignorant of the 245(D)(3)," and "didn't understand that it was greater than the

20   lesser included offense, which was 5, 7 and 9, which should have left [petitioner] at 18 [years]."

21   (ECF No. 18-10 at 12.)  Petitioner claimed that had he known it was greater than the lesser

22   included offense, he would not have signed off on it.  Petitioner objected that the plea form did

23   not state 245(D)(3), it only stated "assault with machine gun on officers 6, 12 years."  (ECF No.

24   18-10 at 12.)  The trial judge responded that he did not put 245(D)(3) on the waiver form because

25   he put in "assault with a machine gun on an officer" to make it more clear to petitioner, stating "I

26   don't see how that could be any more clear."  (Id. at 13.)  The trial judge then reminded petitioner

27   that during the change of plea hearing, the prosecution noted the violation of Penal Code Section

28   245(D)(3), and the judge asked petitioner three separate times "what was his plea to the three

20

1   amended counts for violation of Penal Code Section 245(D)(3), assault with machine gun on an

2   officer alleged to have occurred on or about June 25th of 2017?" and petitioner pled no contest to

3   each.  (ECF No. 18-10 at 13-14.)  Petitioner objected that he did not understand because he

4   signed the plea form before the judge read it and petitioner did not know the People were going to

5   amend the charges but if he had known, he would not have taken the deal.  When the judge

6   explained that the charges were amended to conform with the plea deal, as usual, and petitioner

7   continued to object that he did not understand, the judge asked petitioner:

8
9   > The Court:  So you're telling me, you thought you had to come in here and plead guilty to the sheet, that you had to admit to everything?

10   > Petitioner:  No.  I did not.

11   > The Court:  Okay.

12
13   > Petitioner:  I did not know it was going to be amended, sir, Your Honor.

14
15   > The Court:  How did you think you were going to get to 21 years at halftime?  Again, this is now your – you're way smarter than that, Mr. Rodriguez.

16   (ECF No. 18-10 at 14.)  After petitioner again stated he did not understand the deal, and claimed

17   he wasn't involved in the plea negotiations at all, the judge interrupted petitioner and reminded

18   him that as chief counsel, petitioner signed off on the deal both when the judge took the plea and

19   when petitioner signed the plea form.  (ECF No. 18-10 at 15.)  Petitioner then objected that the

20   gang allegations were dismissed in the interest of justice not with prejudice, as promised.  The

21   judge then stated he would order on the record that the gang allegations are dismissed with

22   prejudice.

23        After briefly going off the record, the prosecution added that the case was to be resolved

24   on December 14th, but petitioner indicated to standby counsel that petitioner "wanted a better

25   deal.  And the 245(D)(3) was always contemplated as the assault charge that the plea would be

26   taken to."  (ECF No. 18-10 at 15.)[4]  The trial judge then denied petitioner's motion to withdraw

27
28   [4]  The record confirms that the case had been set for change of plea on December 14, 2020, which did not occur; instead, the currently set dates for motions in limine and trial were rescheduled,

21

1    the plea, finding petitioner "made a knowing, voluntary and intelligent waiver of his rights.  Fully

2    understood what was happening when he entered his pleas," which was "borne out by the

3    transcript, by the plea form, and by [the judge's] own observation of [petitioner] when [the judge]

4    took the plea."  (ECF No. 18-10 at 16.).

5            The undersigned finds that petitioner's arguments are insufficient to overcome the strong

6    presumption that petitioner's guilty plea was intelligent and voluntary.  As found by the state

7    appellate court, the record does not support petitioner's claims that he was rushed into accepting

8    the plea deal under duress because he thought he would be forced to go to trial without the benefit

9    of all discovery.  Moreover, petitioner's subsequent objection based on his alleged failure to

10   understand he would have to plead guilty to 245(D)(3) is disingenuous at best, particularly in

11   light of the written plea form, as well as the plea colloquy in open court.  Such records confirm

12   that petitioner informed the trial court that he believed a guilty plea was in his best interests, that

13   he understood what he was pleading to, and that he was aware of the consequences of his plea.

14           Also, during the hearing on his motion to withdraw his plea, petitioner acknowledged that

15   he faced potential multiple life sentences if he chose not to plead guilty.  (ECF No. 18-10 at 12.)

16   As the judge explained, petitioner pled to the 245(D)(3) "[s]o [petitioner] can get a 50 percent

17   case and not spend life in prison."  (Id.)  Given the myriad charges petitioner faced if he chose to

18   go to trial, as well as the potential for serving life in prison, the undersigned finds that petitioner's

19   guilty plea resulting in a prison sentence of 21 years was a voluntary and intelligent choice.

20   Parke, 506 U.S. at 29.

21           After a careful review of the record, this court does not find that the trial judge violated

22   petitioner's constitutional rights by denying petitioner's motion to withdraw his plea.  This court

23   agrees with the state appellate court that petitioner understood the ramifications of his plea but

24   later changed his mind.  His arguments concerning discovery of gang activity related charges are

25   unavailing because all gang allegations were dismissed with prejudice as part of the plea bargain.

26   Petitioner has failed to overcome the strong presumption that his guilty plea is valid and that his

27   _____

28   standby counsel was relieved, and "[n]o further negotiation and the court will proceed with the
     trial."  (ECF No. 18-7 at 247 (CT 1662).)

1  representations on the waiver form and in open court are true.  Accordingly, he is not entitled to

2  relief on his claim that the trial court violated his federal constitutional rights in denying his

3  motion to set aside his plea.

4  VI.  Pending Motion

5          Petitioner seeks an order allowing him to conduct discovery into "suppressed material

6  evidence that impeaches gang cops/experts for the prosecution," and to expand the record to

7  inquire into alleged lies the prosecution made to the trial court and to "cure the prosecution's

8  fabricated gang allegations."  (ECF No. 3 at 2-3, 5; see also ECF No. 2 at 38-47.)

9          Although a habeas proceeding is a civil suit, a habeas petitioner "does not enjoy the

10  presumptive entitlement to discovery of a traditional civil litigant."  Rich v. Calderon, 187 F.3d

11  1064, 1068 (9th Cir. 1999); Bracy v. Gramley, 520 U.S. 899, 904 (1997) (stating that unlike other

12  civil litigants, a habeas corpus petitioner is not entitled to broad discovery).  A court considering a

13  habeas corpus petition is ordinarily limited to the state court record.  See Cullen v. Pinholster, 563

14  U.S. 170, 180 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was

15  before the state court that adjudicated the claim on the merits").  Yet, under Rule 6(a) of the Rules

16  Governing § 2254 Cases, 28 U.S.C. foll. § 2254, a court may grant a habeas petitioner's

17  discovery request upon a showing of good cause.  Bracy, 520 U.S. at 904.  Good cause exists

18  "where specific allegations before the court show reason to believe that the petitioner may, if the

19  facts are fully developed, be able to demonstrate that he is entitled to relief."  Id. at 908-09.

20          The Rules Governing Section 2254 Cases in the United States District Courts, in

21  particular Rules 6, 7, and 8, govern a petitioner's ability to conduct discovery and expand the

22  record, as well as a court's assessment of whether to hold an evidentiary hearing.  Rules

23  Governing § 2254 Cases, Rules 7, 8, 9, 28 U.S.C. foll. § 2254.  These Rules are directed at

24  discovery and expansion of the record regarding factual evidence, and not regarding legal

25  authority or guidance.  See Bracy, 520 U.S. at 904 (citing Rule 6(a), Rules Governing Section

26  2254 Cases, which provides that a court may authorize a petitioner to conduct discovery for good

27  cause and stating that good cause exists where "specific allegations before the court show reason

28  to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is

23

1  entitled to relief.") (citation and internal quotation marks omitted).  However, expansion of the

2  record and evidentiary hearings under Rules 7 and 8 are only available if the petition is not

3  dismissed.  Id.

4        The undersigned reviewed the record in this matter and determined that petitioner's

5  pending motion requesting discovery failed to demonstrate good cause.  Petitioner failed to offer

6  specific allegations showing that, if the facts are fully developed, he would be entitled to relief.

7  Bracy, 520 U.S. at 904.  Indeed, as noted by the state court, the gang allegations were dismissed

8  with prejudice.  Because the undersigned recommends the petition be denied, petitioner's motion

9  to expand the record should also be denied.  Rules Governing § 2254 Cases, Rule 7, 28 U.S.C.

10  foll. § 2254.

11       Accordingly, petitioner's motion should be denied.

12  VII.  Conclusion

13       For all of the above reasons, the state courts' denial of petitioner's claims was not

14  contrary to, or an unreasonable application of, clearly established Supreme Court authority or

15  based on an unreasonable application of the facts.

16       Accordingly, IT IS HEREBY RECOMMENDED that:

17       1.  Petitioner's motion for discovery and to expand the record (ECF No. 3) be denied; and

18       2.  Petitioner's application for a writ of habeas corpus be denied.

19       These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21  after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

24  he shall also address whether a certificate of appealability should issue and, if so, why and as to

25  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

26  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

27  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

28  service of the objections.  The parties are advised that failure to file objections within the

24

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 18, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/rodr1539.157

25